[Crim. No. 6812.    Second Dist., Div. One.    Nov. 15, 1960.]

THE PEOPLE, Respondent, v. ESIQUIO GONZALES, Appellant.

Warren L. Ettinger, under appointment by the District Court of Appeal, and Ettinger & Deutsch for Appellant.

Stanley Mosk, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

WOOD, P. J.—Defendants Gonzales and Gandara were accused of unlawfully possessing heroin. Gonzales admitted an allegation of the information that he had been convicted of violating section 11500 of the Health and Safety Code, a felony. In a jury trial, both defendants were convicted. Gonzales (in propria persona) filed a "Notice of Appeal." It will be assumed that he has appealed from the judgment.

Appellant contends that there was no probable cause for his arrest or for the arrest of Gandara; and that the officers obtained the heroin as the result of unlawful search and seizure.

In the afternoon of January 29, 1959, Officer Fesler was on

East First Street in Los Angeles near a café which was known to him as a contact place for narcotic users and peddlers, and he followed a man who left that place and went to a parking lot which was several blocks from the café. That man, whose name was Frank Valdez, was not an informant but he was known to the officer as a narcotic user and peddler. The name of the man was disclosed at the trial. Valdez arrived at the parking lot about 3 p. m. Officer Fesler asked him if he had "scored" at the café on First Street. He replied in the negative, and also said that he was on his way to meet his "connection." In response to questions by the officer, Valdez said that he was supposed to meet the connection within approximately five minutes at a certain service station (which was about two blocks from the parking lot). He also said that the man (the connection) was known to him as "Tony," and that the man "was short, slightly build," about 5 feet tall, and he had a bad eye. He said that the man drove "a pink and black Oldsmobile." The officer told Valdez to drive to the service station where he was to meet the man. The officer and two other officers (Hanks and Grennan) followed him to the service station. The officers drove around the station, but no automobile was there which was similar to the one described by Valdez. After the officers had stopped at a place about a block from the station, Valdez came to them and said that the man was not at the station. Then the officers and Valdez drove around the service station again, and at that time "a pink and black Pontiac" automobile was approaching the station. When the Pontiac turned into the driveway of the station, the driver of the Pontiac "looked in the direction of Frank Valdez and nodded his head." Valdez, who had driven past the driveway, "looked back over his shoulder in the direction of the Pontiac and nodded his head." Officer Fesler, accompanied by the two other officers, drove into the station and stopped behind the Pontiac which had stopped by the pumps. The driver of the Pontiac was getting out of the automobile when the officer approached him. The officer (Fesler) testified that as he approached the Pontiac he noticed that the man, who had a bad eye, "fitted the description" which had been given by Valdez. Prior to arresting the man, the officer had a brief conversation with him wherein the officer asked "What he had been arrested for." The man replied that he had been arrested for narcotics. (The testimony as to that conversation was related out of the presence of the jury when the question as to probable cause was being con-

sidered by the judge.) At the time of arresting the man, the officer questioned him regarding narcotics. He replied that he did not have any narcotics. The officer arrested and handcuffed the man, and searched him and the automobile, but did not find any narcotic. The man was the defendant Gonzales. A woman and a child were in the front seat of the Pontiac. The woman was defendant Gandara. After the officer had searched Gonzales and the automobile, the officer went to defendant Gandara and asked if she was carrying anything on her. She replied, ''No.'' The officer testified that he ''then put the handcuffs on her and told her she was under arrest for narcotics and I was taking her to the Police Building where I was going to have her searched by a policewoman''; that, at that time, she said, ''Tony, tell them, tell them; Tony tell them what they want''; she also said, ''What shall I do?''; Gonzales said, ''I don't know what they want.'' On cross-examination, the officer said that she made those statements before and during the time she was being handcuffed; that when she knew they were going to handcuff her she became emotional. After she was handcuffed (with her hands behind her) she was placed in ''the car,'' and Officer Hanks drove the car to the police station. Officer Hanks and the defendant Gandara were in that car. The other officers and Gonzales, who were in the police car, followed Officer Hanks to the police station.

Officer Hanks testified that on the way to the police station he had a conversation with Gandara, and that she entered into the conversation freely and voluntarily. He asked her if she was carrying narcotics for Gonzales. She replied, ''No.'' About the time they were arriving at the station, she said she was carrying a package in her brassiere, that Gonzales had given it to her at her house about five minutes before the arrest, and that she had told him that she did not want to carry it. She also told the officer that he could get the package if he wanted to. He replied that he did not search women.

At the police station, while Officer Hanks and Fesler were present, Gandara said that Gonzales had come home about five minutes before the arrest and had said that they were going for a ride. She also said that Gonzales handed her a package which she finally agreed to carry, and she put it in her brassiere and they drove to the service station where they were arrested. When Policewoman Lambert came into the room, the other officers left the room. The policewoman searched

Gandara and found a package in her brassiere, which package (Exhibit 1) contained 12 bindles of heroin.

After the package had been found, Officers Fesler and Hanks had a conversation with both defendants. The officers testified that the defendants entered into the conversation freely and voluntarily. In that conversation, Officer Fesler told Gonzales that Gandara had said that she was carrying the narcotics for Gonzales and that he had given the narcotics to her. Gonzales replied that he did not know anything about it. He (Gonzales) asked to see the narcotics. When the bindles were shown to him, he said they were his and that he had gotten them from a man named Charlie, that Gandara was present when he got them but she did not know what he was getting, that he paid $100 for them. The officer also testified that Gonzales said that he asked Gandara to carry the package because he might be "stopped" and he had a prior narcotic arrest, and if they found the package on him he might get a traffic ticket.

Defendant Gonzales did not testify. The testimony of Gandara (on direct examination) was in substance the same as the statements she made in the above-mentioned conversations with the officers. On cross-examination, she said it was her idea to put the package in her brassiere; and that she knew it was heroin.

The officers did not have a search warrant or a warrant of arrest. When the prosecution offered the heroin in evidence the defendant Gonzales objected to the offer on the ground that there was no probable cause for his arrest or the arrest of Gandara and that the officers obtained the heroin as the result of unlawful arrest and search. Gandara objected on the ground that there was no probable cause for her arrest. The objections were overruled.

Appellant (Gonzales) contends on appeal, as above stated, that there was no probable cause for either arrest, and that the officers obtained the heroin as the result of unlawful search and seizure. ■■■ With respect to appellant's arrest, he argues that since Valdez was not known to the officers prior to the time they followed him from the café to the parking lot, Valdez was not known to them as a reliable informer; and that prior to appellant's arrest the information furnished by the unreliable informer was not corroborated. In summary, with respect to probable cause for arresting Gonzales (appellant), there was evidence that Officer Fesler, who knew Valdez as a narcotic user and peddler, saw Valdez leave a café which was

a contact place for narcotic users and peddlers; in response to questions by the officer, Valdez said in effect that he had not obtained any narcotics at the café, but he was on his way to meet his "connection," that is, a person from whom he expected to obtain narcotics; that the officer and other officers followed Valdez to the service station where Valdez was to meet the connection; soon after they arrived in the vicinity of the station, a pink and black automobile, similar in general appearance to the one theretofore described by Valdez, was driven into the station; the officer noticed that as the automobile was entering the station the driver looked toward Valdez and nodded, and that Valdez looked toward that driver and nodded; when the officer approached the driver of that automobile he noticed that the driver had a bad eye and that his general appearance answered the description theretofore given by Valdez; in response to a question by the officer, the driver of that automobile said he had been arrested for narcotics. That driver was defendant Gonzales. The evidence was sufficient to prove probable cause for arresting Gonzales and for searching him and his automobile. As above stated, no narcotic was found in that search.

The heroin which was received in evidence was obtained in a search of Gandara. The principal question on this appeal is whether the evidence which was obtained in the search of Gandara was admissible against appellant. Appellant argues that such evidence was not admissible for the reason there was no probable cause for the arrest of Gandara, and that she did not consent to the search, and that the arrest and search of her were unlawful. ▆▆▆ Appellant asserts correctly that he is entitled to object to the use of any evidence which was obtained by unlawful search of Gandara, even though such search would not violate appellant's constitutional rights. (See *People* v. *Martin,* 45 Cal.2d 755, 761 [290 P.2d 855].) ▆▆▆ Under the circumstances here, where the officers had probable cause to search Gonzales and his automobile and where that search did not reveal narcotics, the officers were justified in suspecting and proceeding to question Gandara, who was also in the automobile. After Gonzales and the automobile had been searched and no narcotics had been found, Officer Fesler asked Gandara if she was carrying anything, and she replied, "No." Then, according to the testimony of Officer Fesler on direct examination, he placed the handcuffs on her and told her she was under arrest. Also on direct examination, he said that, at that time, she said, "Tony, tell

them, tell them; Tony tell them what they want," and "What shall I do?" On cross-examination, he said that before she was handcuffed she made those statements, above quoted. Also on cross-examination, he said that before and during the time she was being handcuffed she made those statements. Also on cross-examination, he said that after she found out she was going to be arrested she made those statements. It thus appears that the officer first said that at the time he was handcuffing her she made those statements, and that he thereafter said that she made those statements before she was handcuffed, and that she made them before and during the time she was being handcuffed, and she made them after she knew she was going to be arrested. Apparently the trial judge interpreted the testimony, regarding her statements to Gonzales, as meaning that before she was handcuffed or arrested she told Gonzales "to tell" the officers. Under the circumstances here, where her statements to Gonzales included repetition of the words "tell them," the trial judge could have so interpreted the testimony. There was evidence that she became quite emotional before she was handcuffed or arrested. In summary, with respect to probable cause for arresting her, the officers had information from Valdez to the effect that he was then, at the time of giving the information, on his way to meet his connection and obtain narcotics from him; Valdez gave the officer a description of the man who was to be the supplier, and he also described the automobile which the man would be driving; he also told the officer where he (Valdez) was to meet the man; those descriptions were applicable to the man and the automobile which soon thereafter arrived at the designated place; as the man was arriving at the place he signalled to Valdez by nodding, and Valdez in indicating his recognition of the signal also nodded; there was probable cause for arresting the man, Gonzales, and for searching him and his automobile; that search did not reveal narcotics which the officers had reasonable cause to believe had been brought to the meeting place for delivery to Valdez; in view of failing to find narcotics in that search, the officers were justified in suspecting that narcotics had been brought there on the person of Gandara who was in the automobile; when the officer questioned her, before the arrest, she became quite emotional and she directed Gonzales "to tell" the officers; under such circumstances the officers had probable cause for arresting her.

Furthermore, it is to be noted that, at the trial, counsel for Gandara asked Officer Fesler (on cross-examination) what

information he had regarding Gonzales or Gandara, and at that time Gonzales objected to the question upon the ground that it was immaterial. The objection was sustained. It thus appears that Gonzales, who is now urging that there was no probable cause for arresting Gandara, made an objection which resulted in a ruling that prevented the officer from relating information, if any, he had regarding Gandara. The officer had testified previously, on that cross-examination, that he had information regarding her. In view of such objection by Gonzales which prevented the officer from relating information about Gandara which might have been material on the subject or probable cause for arresting her, the appellant Gonzales is not in a position to contend, as indicated in his brief, that the record fails to show that the officers had any information that Gandara was involved in narcotic traffic. ▮ The search of Gandara was an incident of a lawful arrest. In view of the above conclusion regarding the search, it is not necessary to determine whether Gandara voluntarily consented to the search. The court did not err in receiving the heroin in evidence.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.